UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAIMEE AVERY,<br><br>        Defendant. | Crim. Action No. 1:24CR79 |

**MEMORANDUM IN AID OF SENTENCING**

    Jaimee Avery, a devoted mother to four children, including a newborn baby, and gainfully employed pharmacist, traveled to the Capitol almost four years ago with the purpose of hearing then-President Trump speak for what she thought would be the last time as president. She traveled to the district with her husband of 23 years, Daniel Avery. After hearing the speeches, the couple followed the swell of the crowd walking towards the Capitol. Ms. Avery and her husband walked calmly into the Capitol at 2:44 p.m. through the West Terrace Door and remained inside for 18 minutes. While inside, they did not engage in any violence or destruction of property. They did not enter any private offices. They had one, non-confrontational conversation with two police officers after which they immediately complied with their direction to leave. Shortly after her arrest, Ms. Avery quickly agreed to plead guilty and on November 8, 2024, she will be before the Court for sentencing on two class B "parading and picketing" misdemeanors.

The sentencing factors as applied to this case—as well as the sentences imposed in other comparable January 6 parading and picketing cases—call for a sentence of a brief period of continued supervision.

## I.   Procedural History

Ms. Avery was arrested at her home three years after January 6, 2021, on February 8, 2024.[1] After spending the night in the local jail, she was released at her Initial Appearance on conditions of release with which she has since complied. Ms. Avery quickly expressed a desire to accept responsibility for her conduct and pleaded guilty at the earliest opportunity, on May 20, 2024. On September 3, 2024, Ms. Avery gave birth to a baby girl. The Court has granted counsel's Motion to conduct the sentencing hearing by video teleconference.

## II.   Application of the sentencing factors

Honest application of the federal sentencing, 18 U.S.C. § 3553(a), confirms that a sentence of probation to include community service is sufficient, but not greater than necessary, to meet the goals of sentencing. What follows is a detailed review of the relevant § 3553(a) factors.

### A. Ms. Avery's history and characteristics show that a brief period of probation is appropriate.

Jaimee Avery's life, character, and conduct before and since January 6, 2021 show that a period of incarceration is unwarranted.

---

[1] The arrest warrant was issued February 5, 2024. Ms. Avery was not aware of the warrant until law enforcement showed up at the home to arrest her and Mr. Avery.

### *i. Ms. Avery grew up in a loving family who taught her the value of hard work, faith, and community.*

Jaimee Avery was born in Tempe, Arizona on August 6, 1981 to Albert and Ginger Galindo. Jaimee's parents had yet to graduate high school when she was born. Jaimee has three siblings. Jaimee's father was the eldest son of migrant farm workers. Both parents earned their GEDs later in life. Jaimee's mother graduated from nursing school at 50. Jaimee's parents were married for 25 years. They divorced when Jaimee was an adult.

Jaimee was primarily raised in Blythe, California, an underserved, rural community. Jaimee's family and their community did not have access to many educational or professional opportunities. However, Jaimee enjoyed a cheerful childhood, surrounded by loving families who prioritized community and faith. From an early age, Jaimee spent time with her neighbors at the local church. Her parents taught Sunday school and were youth group leaders. Jaimee volunteered to care for and teach the younger children in the church community. As early as her teenage years, Jaimee secured employment on a Little Debbie bread and tortilla route. Right after high school, Jaimee and her soon-to-be-husband Daniel had their son, who is now 24 years old. Only a few years later, their daughter was born. Years later, the couple had another child, now two, and Jaimee recently gave birth to the couple's fourth child.

### *ii. Ms. Avery understands the value of education in changing her life path.*

As she grew older, Jaimee's strong work ethic continued to allow her to achieve her goals despite not growing up with financial resources. Following her mother's

3

example, she recognized education as the key to attaining stability for her young family. Jaimee and her husband enrolled in community college as nursing majors—raising their young children while attending college full time. Jaimee was awarded multiple scholarships. She also enrolled in a summer program for minority students that allowed her to work at a biochemistry lab at Arizona State University. She worked hard over that summer, and earned a spot working in the lab during the school year. In 2008, Jaimee graduated from Arizona State University with a Bachelor's in Life Sciences.

### *iii. Despite obstacles, Ms. Avery has worked hard to achieve her educational and professional goals.*

After supporting her husband through his educational program, and dedicating years to raising her children full-time, Jaimee went back to school in 2013. In 2018, she received her Pharm.D from Midwestern University. Jaimee went back to school not only to achieve the goals she set out for herself, but to show her children that one cannot give up on one's dreams, just as her mother had shown her.

During her Pharm.D program, Jaimee interned at a local Safeway pharmacy and at the Arizona State Behavioral Hospital. Through these experiences, she developed a passion for serving the public, counseling patients, administering vaccines, and creating a warm environment for customers. She found particular satisfaction caring for patients facing mental health struggles. After graduation, she worked for the Arizona Community Pharmacy within the Partners in Recovery mental health facility. Here, she worked as part of a team to address the health and

wellness issues of each patient. She helped her patients increase medication adherence, increase workforce participation, and reduce rates of relapse.

Jaimee's priority is patient care—she gains satisfaction from helping others. When a change in management shifted the focus at the pharmacy from patient care to profitability, Jaimee followed her heart and transitioned to a position as a staff pharmacist at her local Walgreens, where she currently works.

### iv. Ms. Avery cares deeply about her community and works to improve the lives of the people around her.

Stemming from her childhood connection to her church and neighborhood community, Jaimee dedicates her time to caring for those around her. In her professional life, Jaimee has pursued a career path that allows her to connect with and care for others. In her personal life, Jaimee and her husband have created an informal organization of community members who cook and distribute meals to their local homeless population. Particularly on holidays, Jaimee works to ensure that those within her community feel the same love and care she gives to her family.

### v. Ms. Avery's most important role in life is her role as a mother.

Out of all her accomplishments, Jaimee takes the most pride in her role as a mother to her four children. Despite having children at a young age, Jaimee has consistently made choices to provide her children with a stable and enriching life. She put her own educational and professional career on hold to be there for her children every day. Her daughter was a competitive gymnast and her son a travel ice hockey player. She spent their childhoods at the gym and the rink, volunteering in their schools, and fundraising for their activities. It was not until her children were in their

early teens and excelling both academically and in their chosen activities that Jaimee continued to pursue her educational and professional goals. Jaimee and her husband had their third child in May 2022. She is just over two years old. Recently, Jaimee gave birth to a healthy baby girl. Below is a photo of the Avery family with the baby girl.



> ### vi. Ms. Avery's history does not warrant a sentence that keeps her away from her family, including her newborn child.

Jaimee recently gave birth to a baby girl. She also currently has a toddler at home. Her older children are students. Jaimee, who has no criminal history[2] and has complied with all conditions of release, needs to be at home to properly rest post-partum and to care for her toddler and newborn baby.

---

[2] In her response to the PSR, Ms. Avery explained the circumstances of her arrest for possession of marijuana, which was ultimately dismissed. In short, the marijuana joint in the car was not her and had left there by Mr. Avery.

**B. The nature and circumstances of Ms. Avery's offense merit a probationary sentence**.

The Averys traveled to Washington, D.C. to attend the Stop the Steal rally organized by former President Trump. The couple decided to go after they heard that President Trump would be speaking. Having decided to go, they planned to make a weekend of it and stay to visit museums and explore the city. The couple purchased airplane tickets and a hotel room. They did not travel with a group or anyone else.

On the morning of January 6, the Averys arrived early to get a good spot for Mr. Trump's speech. They did not realize that other people would be speaking or that they would have to wait to hear Mr. Trump. After hearing most of Mr. Trump's speech on the jumbotron, cold and hungry by this point, they walked off to look for something to eat. Soon, they noticed the crowd was walking in the direction of the Capitol, though Jaimee did not realize the crowd was walking towards the Capitol until she reached the Capitol grounds. The couple followed the crowd closer to the Capitol and walked in through the West Terrace door. When Jaimee walked in, the door was being held open as depicted here:



7

The couple entered at 2:44 p.m. Once inside, they did not damage property or enter any personal offices. They had one, brief conversation with police officers and then followed their direction to leave the building. When they returned home, Jaimee did not glorify or boast about having been at the Capitol. She was cooperative when she was arrested three years later. When Mr. Avery was arrested, he told law enforcement officers that he felt guilty for leading his wife astray.[3]

Ms. Avery pleaded guilty at the earliest opportunity. The government—with zero basis—states that Ms. Avery has not demonstrated remorse. This is patent speculation. The government appears to be grasping for a basis to justify its unwarranted request for incarceration.[4] To the contrary, Ms. Avery expressed her remorse through her plea, shortly after her arrest, and in her letter to the Court, in which she writes, "January 6th 2021 was a terrible day that only caused further division in our country. I am very ashamed to have played a party in that." Letter of Jaimee Avery, Exh. 1.

### C. The government's recommendation would create a disparate sentence when compared to other defendants convicted of parading and picketing who engaged in similar conduct.

Ms. Avery entered a guilty plea to the only offer the government tendered, that is, to two petty misdemeanor counts: one count of Parading, Demonstrating, or

---

[3] FBI 302, dated 2/14/2024.

[4] Because the government has no factual basis to support its speculation that Ms. Avery lacks remorse, the government points out that Ms. Avery declined to make a statement in the PSR. On the advice of counsel and as is routinely the practice in this district, Ms. Avery did not discuss her offense conduct in the PSR interview. She did, however, adopt her statement of offense, which clearly lays out that she accepted full responsibility for her conduct on January 6.

8

Picketing in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(G), and one count of Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(D). Prior to the D.C. Circuit's opinion, *United States. v. Little,* 78 F.4th 453 (D.C. Cir. 2023), which held that split sentences cannot be imposed for petty offenses, the government's standard plea offer for defendants similarly situated to Ms. Avery was to a *single count* of Parading and Picketing. Post *Little*, the government has required defendants to plead guilty to two counts. The fact that Ms. Avery pleaded guilty to two counts for the same conduct that previously resulted in one conviction has no bearing on her culpability vis a vis other defendants convicted of one count of parading and picketing.

A review of sentences this Court imposed in other parading and picketing cases in which defendants were equally or more culpable than Ms. Avery shows that the government's request of thirty days would create an unwarranted disparity. For example:

### ***United States v. Julia Sizer***, 1:21CR621 (CRC)

Ms. Sizer pleaded guilty to one count of Parading and Picketing for entering the Capitol and recording video depicting protestors that had overwhelmed law enforcement on the West Side. She passed through the Parliamentarian Doors while alarms blared overhead. Though she was only in the Capitol for a few minutes, when asked by the FBI whether she entered the building, she initially stated that she had not entered.[5] The Court imposed a sentence of 12 months' probation.

---

[5] Government's Sentencing Memo, 1:21CR621 (CRC), ECF. No. 26.

### *United States v. John Clarence Wilkerson IV*, 1:23CR303 (CRC)[6]

Mr. Wilkerson pleaded guilty to one count of Parading and Picketing. He was one of the first to approach the Capitol. He entered the building through the Senate Wing door, stepping over broken glass to get in as an alarm sounded throughout the area. He made his way through the Capitol, exiting about 14 minutes later. He later posted a video to social media in which he bragged about having been inside the Capitol. He also posted a message stating in substance that the riot had been peaceful until the Capitol police started using violence. The Court imposed a sentence of 25 months' probation.

### *United States v. Bryan Wayne Ivey*, 1:21CR267(CRC)

Mr. Ivey pleaded guilty to one count of Parading and Picketing for entering the Capitol building through a smashed window. He was one of the first rioters to enter the building. Mr. Ivey was in the building for 34 minutes, minimized his conduct in his FBI interview, and deleted photos and videos from his cell phone after January 6.[7] The Court *rejected* the government's request for 14 days incarceration and imposed a sentence of probation, with a condition of 60 days of home detention.

### *United States v. Trudy Castle*, 1:22CR261(CRC)

Ms. Castle pleaded guilty to one count of Parading and Picketing for entering through the Senate Wing Door minutes after the first protestors breached the building. Ms. Castle remained in the building for 40 minutes, entering various

---

[6] Government's Sentencing Memo, 1:21CR302 (CRC), ECF. No. 8.
[7] Government's Sentencing Memo, 1:21CR267, ECF. No. 34.

locations throughout the building upstairs and downstairs. She took photos inside the building and left only after officers began using tear gas. Later, she removed evidence from her phone.[8] The Court imposed a sentence of 30 months' probation.

Meanwhile, the cases the government cites are not comparable to Ms. Avery. First, the government strains to compare Ms. Avery to Cory Brannan. Defendant Brannan entered the Capitol through a broken window two minutes after building was breached wearing a tactical vest and carrying goggles and scissors. Mr. Brannon made comments the government characterized as "dubious" in his post-arrest interview.[9] Ms. Avery did not climb through a broken window and did not come dressed for battle. The government misses the mark again by attempting to compare Ms. Avery to defendant Daniel Warmus. Defendant Warmus—unlike Ms. Avery—was among the first wave of protestors to enter the Capitol. He encouraged other protestors to come in after him. He also evaded an officer's attempt to detain him and remained in the building after this interaction. Ms. Avery, on the other hand, left immediately after officers directed her to do so. Finally, defendant Warmus deleted videos and pictures he took that day from his phone and while on pre-trial release, posted videos of him harassing police officers.[10] Ms. Avery, in contrast, was perfectly compliant with conditions of release.

Ms. Avery's conduct did not include any of the aggravating factors that may have supported incarceration for defendants Brannon and Warmus. Instead, her case

---

[8] Government's Sentencing Memo, 1:22CR261(CRC), ECF. No. 41.
[9] Government's Sentencing Memo, 1:21CR637(TSC), ECF. No. 33.
[10] Government's Sentencing Memo, 1:21CR417(PLF), ECF. No. 36

11

is more like other parading and picketing cases in which district judges imposed probation.

### D. A probationary sentence, with continuing conditions, will achieve the goals of sentencing.

A prison sentence for petty misdemeanors for a new mother whose offense conduct occurred almost four years ago is inimical to the goals of sentencing. Indeed, any sentence of imprisonment would be particularly harsh for Ms. Avery. She recently delivered a baby via cesarean section and she is presently nursing. Incarceration—even for a few days—will compromise her ability to feed her baby. This collateral consequence is totally unwarranted for a misdemeanor offense that occurred years ago.

As for specific deterrence, Ms. Avery's conduct since January 6, 2021, and her compliance since her arrest shows that she will never cross a line again. As for general deterrence, locking up a mother of four for a petty offense, years after January 6 is not going to deter anyone from taking anti-democratic action, especially while powerful political leaders responsible for spreading lies about how the election was stolen and who steered the crowds towards the Capitol that day remain free and have experienced no consequences.

Finally, a sentence of continuing supervision and restrictions on her liberty constitutes a just punishment for Ms. Avery's misdemeanor offense. After over three years of perfect compliance, Ms. Avery will continue to be monitored on supervised release with restitution obligations, which is in and of itself a form of punishment. *See Mont v. United States*, 587 U.S. 514, 524 (2019) ("Supervised release is a *form of*

*punishment* that Congress prescribes along with a term of imprisonment as part of the same sentence.") (emphasis added); *United States v. Haymond*, 588 U.S. 634, 648 n.5 (2019) ("[T]he sword of Damocles hangs over a defendant 'every time [he] wakes up to serve a day of supervised release.'"); *Gall v. United States*, 552 U.S. 38, 48 (2007) (noting that even a non-custodial sentence imposes serious restrictions on one's liberty and constitutes punishment, not a "free pass"); *see also United States v. Cohen*, 459 F.3d 490, 496 (4th Cir. 2006) ("[R]estitution is […] part of the criminal defendant's sentence.").

## Conclusion

Jaimee Avery accepted responsibility quickly and without reservation for her conduct four years ago. Since that day and before it, she has been a model citizen and mother. A sentence that allows her to continue working and taking care of her children without interruption, with continued supervision, is sufficient but no greater than necessary to achieve the goals of sentencing.

Respectfully Submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
Elizabeth Mullin
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

13